IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02403-MSK-MJW

AARON S. RABIDUE,

Plaintiff,

v.

TRUDY SICOTTE,
NICOLE BLATNICK,
TINA ROSLER,
ALVIN MASSENBURG,
CHIEF MEDICAL OFFICER MARTINEZ,
JENNIFER NOVATNY,
MAJOR LONG,
WARDEN FALK,
HONG DANG, and
DEPUTY DIRECTOR OF PRISONS JOHN DOE

Defendant.

# REPORT & RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS
**(Docket No. 27)**

**Michael J. Watanabe**
**United States Magistrate Judge**

Inmate Aaron Rabidue brings this lawsuit for damages under 42 U.S.C. § 1983, asserting that the employees of the Limon Correctional Facility were deliberately indifferent to his chronic pain and to fractures in the bones of his left foot—leaving him permanently hobbled as a result. (Docket No. 9.) All Defendants who have been served and entered appearances now move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Docket No. 27.)

The Court has reviewed the parties' filings (Docket Nos. 27 & 40), taken judicial notice of the Court's entire file in this case, and considered the applicable Federal Rules

of Civil Procedure, statutes, and case law. Now being fully informed, the Court recommends that Defendants' motion be granted in part and denied in part.

## Facts As Alleged

Before his incarceration, Rabidue was stabbed in the back with a pair of scissors—causing nerve damage, chronic pain, and a loss of mobility in his left leg. (Docket No. 9, p.7.) The condition also caused the muscle in Rabidue's left leg and foot to atrophy. (*Id.*) The chronic pain was treated (again, before incarceration) by Neurontin, Baclofen, and Narco. (*Id.*)

After his incarceration, Rabidue sought treatment for his chronic pain from the prison medical facilities. (*Id.*) His first meeting with medical staff was on September 18, 2012, with Defendant Sicotte, a medical provider at the prison. (*Id.*) Sicotte provided only a 60-day prescription for Ibuprofen, on the belief that Rabidue was lying about his chronic pain and was simply looking to get high. (*Id.* at 8.) On November 8, 2012, Rabidue came back to Sicotte for further medication; she noted the atrophy and limited mobility in his left foot, and put in a request for Neurontin and physical therapy, but did not otherwise provide any relief. (*Id.*) She also made false entries in the medical reports for that day, exaggerating the extent of Rabidue's exercise and stating that he took no medicine for pain. (*Id.*) On January 12, 2013, Rabidue brought Sicotte's failure to provide effective pain medication to the attention of the prison's Health Service Administrator, Defendant Blatnick, to no avail. (*Id.*) Rabidue did not receive effective medication for his chronic pain until July 2014; by that time, Sicotte had been fired for her failure to provide adequate medical care to inmates. (*Id.* at 9.)

On January 31, 2014, Rabidue visited the medical center due to severe foot pain. (*Id.* at 10.) He did not know it at the time, but his left foot was fractured. (*Id.*) Defendant Blatnick examined Rabidue; Defendant Massenburg (another medical provider) was present but did not examine Rabidue. (*Id.*) They wrapped Rabidue's foot in a bandage and gave him a seven-day supply of Ibuprofen. (*Id.*) Rabidue requested certain accommodations: crutches; transfer to a first-floor cell so that he would not need to climb stairs; and a "lay-in" so that he would not need to walk to the cafeteria or medical line. (*Id.*) He did not receive any of these accommodations. (*Id.*)

One February 4, 2014, returned to the medical facility for a follow-up with Defendant Rosler, a nurse. (*Id.* at 9.) He reported that the Ibuprofen did not ease his pain, and that the pain had grown much worse; Rosler did not examine Rabidue's foot, but did note that he now walked with a limp. (*Id.*) Rosler consulted with Massenburg, and they added Tylenol to the Ibuprofen. (*Id.*) The following day, x-rays were taken of Rabidue's foot. (*Id.*) The results were not available until February 14, 2015; in the meantime, Rabidue's foot remained wrapped but no accommodations were made to limit Rabidue's walking or other physical activity. (*Id.*)

On February 11, 2014, Rabidue returned to Defendant Rosler and reported that the Tylenol did not help. (*Id.* at 11.) Without any examination of Rabidue's foot, Rosler placed him on Tylenol 3 (with Codeine) for two days. (*Id.*) Then:

> On 2-14-2014 Defendant Massenburg finally conducted a physical examination of Rabidue and noted the diminished range of motion in his left foot, the atrophy of his right calf, decreased touch sensation from nerve damage, that the Plaintiff's left foot was in severe pain when pressure was applied to it, and that his left foot showed visual inflammation. Rabidue was not on any pain medication at that time and it was not until that time that [Neurontin] was ordered to treat the foot pain. Again, Massenburg failed to provide Rabidue with crutches, a housing

4

> restriction, or a lay in despite being requested to, and this caused further pain and damage to his foot.
>
> On 2-14-201[4] the Plaintiff's x-ray results came back showing that he was healing from a fractured foot. Massenburg consulted with him and ordered a 60 day supply of Salsalate as a trial medication for pain control. . . . Again, no crutches, housing restrictions, or lay ins were ordered, though requested, causing further pain and damage to Plaintiff' s foot.

(*Id.* at 11–12.) Massenburg then falsified the medical records as to the possible causes of Rabidue's fracture. (*Id.* at 12.)

The following month, on March 4, 2014, Plaintiff heard "a popping or cracking sound" from a re-fracturing of his foot. (*Id.*) He returned to Massenburg to report the incident and to report that the Salsalate did not help his pain; Massenburg prescribed Naproxen, even though Rabidue stated that Naproxen would not help his pain. (*Id.*) The following day, a new x-ray was taken; when the results came in on March 11, 2014, they confirmed the new fracture in Rabidue's foot. (*Id.* at 13.) At that point, Massenburg provided Rabidue with a "post-op shoe" to limit the movement of Rabidue's foot, and he prescribed continued Tylenol and Naproxen. (*Id.*) Massenburg also referred Rabidue to an orthopedic specialist. (*Id.*)

On March 18, 2014, Rabidue met with Defendant Blatnick to discuss his medical treatment. (*Id.* at 14.) Blatnick denied the existence of fractures, maintained that the course of treatment and lack of accommodations was appropriate for a sprain, and explained that continuous pain medication was not cost-effective. (*Id.*) The next week, on March 24, 2014, Rabidue again met with Blatnick; she informed him at that time that his request for physical therapy was denied because his weak foot was a pre-existing condition. (*Id.* at 15.)

On March 25, 2014, Rabidue was taken off Neurontin and given both Tylenol 3 (with Codeine) and Baclofen. (*Id.*) This effectively eased his pain, but the prescription was for only 14 days. (*Id.*)

On April 14, 2014, Rabidue again heard a loud snapping sound and felt extreme pain in his left foot. (*Id.*) He went to the medical facility and was seen by Defendant Dang, who provided Tylenol but no other relief. (*Id.*) Dang also falsified the medical records, adding statements suggesting that Rabidue's ability to ambulate was better than claimed. (*Id.* at 16.) Then:

> On 4-17-14 Plaintiff finally saw an orthopedic specialist who noted that 4 of Rabidue's metatarsals in his left foot were fractured and in various stages of healing. He placed Rabidue's foot in a cam walker boot to prevent further injury and to aid in healing. This specialist told Rabidue that the Defendants should have stabilized his foot and that he should not have been walking up and down stairs and that he would have permanent injury, including long term arthritis, due to the injuries incurred because of the Defendant's failure to treat his foot properly.

(*Id.*) The next day, Rabidue's mother called and spoke with Defendant Falk (the prison warden), Defendant Blatnick, and Defendant Long. (*Id.*) They explained the foregoing medical history to her and denied that either the treatment for Rabidue's foot or the treatment for his chronic pain was inadequate. (*Id.* at 18.)

The following week, Rabidue again met with Blatnick to request restrictions on his physical activities and continuous pain medication—again to no avail. (*Id.* at 18–19.)

Throughout this process, Rabidue was never provided crutches, a lay-in slip, or transfer to the first floor of the prison. (*See id.*, *passim.*) To the extent he was provided medication, the medication was prescribed for short periods—3, 7, or 14 days—leading to gaps in treatment while the prescriptions were refilled. (*Id.* at 13–14.)

Rabidue now sues under 42 U.S.C. § 1983, asserting two deliberate-indifference claims under the Eighth Amendment. The first claim is that Defendants' failure to provide more effective medication for his chronic pain violated the Eighth Amendment. The second claim is that Defendants' failure to impose limitations on his physical activity led to further fractures—and combined with their failure to provide better pain medication, violated the Eighth Amendment.

## Discussion

As a preliminary matter, Defendants move under Rule 12(b)(1) to dismiss official-capacity claims for damages, on the argument that such claims are barred by sovereign immunity. (Docket No. 27, pp.3–4.) Rabidue concedes the point and disclaims any intention to seek damages from Defendants in their official capacities. (Docket No. 40, p.2.) Accordingly, the Court recommends without further analysis that Defendants' motion be granted in this regard, and that any portion of the Amended Complaint that seeks money damages against Defendants in their official capacities be dismissed under Rule 12(b)(1).

### I. **Pleading Deliberate Indifference**

The rest of the Defendants' motion comes under Rule 12(b)(6). Chief Judge Krieger recently set forth the applicable legal standard:

> Under Rule 8(a) of the Federal Rules of Civil Procedure, a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a pleading must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. While allegations that are so general that they encompass a wide swath of conduct, much of it innocent will not be sufficient, the statement need only give fair notice of what the claim is and the grounds upon which it rests.

7

*Animal Care Sys., Inc. v. Hydropac/Lab Products, Inc.*, No. 13-cv-00143-MSK-BNB, 2015 WL 1469513, at *3 (D. Colo. Mar. 26, 2015) (internal citations and quotation marks omitted).

Rabidue's complaint challenges the medical care provided by the prison. The standard for inadequate medical care under the Eighth Amendment is "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The test is both objective and subjective: a prisoner must establish that he was deprived of a medical need that is, objectively, "sufficiently serious," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and that the defendant subjectively knew of and disregarded "an excessive risk to [the prisoner's] health and safety," *id.* at 837.

Further, for individual liability under § 1983, the complaint must allege facts that show the defendant personally participated in the alleged violation. *Jenkins v. Wood*, 81 F.3d 988, 994–95 (10th Cir. 1996) ("[P]laintiff must show the defendant personally participated in the alleged violation, and conclusory allegations are not sufficient to state a constitutional violation."). Further, a defendant may not be held liable under § 1983 merely because of his or her supervisory position. *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996). Rather, there must be an affirmative link between the alleged constitutional violation and the defendant's own participation or failure to supervise. *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).

Defendants argue that the Amended Complaint falls short of these legal standards in three ways: first, that the allegations do not show personal participation by Defendants Falk and Long; second, that the foot-fracture allegations do not establish

8

the objective component of the claim; and third, that the pain-medication allegations do not establish the subjective component of the claim.

### A.     Personal Participation by Defendants Falk & Long

Defendants Falk and Long show up in the Amended Complaint twice. First, Rabidue's mother discussed her son's medical care with Falk, Long, and Blatnick on April 18, 2014. (Docket No. 9, pp.17–18.) Second, the following week, Blatnick declined to provide a continuous prescription for pain medication—claiming that to do so would require approval from Falk and Long. (*Id.* at 18.)

According to Rabidue, these two allegations show that Falk and Long were personally aware of the inadequacy of his medical care and, despite being in a position to do so, did nothing to improve Rabidue's treatment. The Court disagrees. The allegations, taken to be true, establish that Falk and Long were informed that Rabidue's mother was unsatisfied with the medical care. Nothing is alleged suggesting that Falk and Long were themselves subjectively aware (or should have been aware) that Rabidue's mother was right, or that Falk and Long should have accorded her medical opinions greater weight than their own medical staff's opinions. There are no facts from which the Court can reasonably infer that Falk and Long knew (or consciously disregarded the risk) that the prison's course of treatment was inappropriate.

Accordingly, the Court recommends that Defendants motion to dismiss in this regard be granted, and that Defendants Falk and Long be dismissed from this case under Rule 12(b)(6).

## B. <u>Objective Seriousness of Rabidue's Foot Fractures</u>

Defendants state that Rabidue's foot-fracture allegations are not objectively serious enough to trigger the Eighth Amendment, and then characterize Rabidue's complaint about his foot fractures as a dispute over types of treatment:

> . . . Plaintiff alleges that on a number of occasions that certain Defendants denied him certain housing restrictions, crutches, and a medical lay in. As to these allegations, **Plaintiff has failed to show that his need for any housing restrictions, crutches, or even a medical lay in was objectively necessary.** Thus, as to these allegations, his Eighth Amendment claim fails.
>
> . . . [W]hile Plaintiff believes he needs certain housing restrictions, crutches, and a medical lay in, it can be inferred from the complaint that the Defendants do not believe that Plaintiff requires these things. Thus, Plaintiff's allegations amount to a disagreement in the course of his treatment and does not rise to the level of an Eighth Amendment claim.

(Docket No. 27, pp.8–9 (emphasis added).) From there, Defendants cites the applicable law for disagreements over the course of treatment:

> "A difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983." *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968). Even a disagreement between experts does not give rise to a claim under § 1983 for deliberate indifference. *Supre v. Ricketts*, 792 F.2d 958, 962-63 (10th Cir. 1986); *Redding v. Marsh*, 750 F.Supp. 473, 478 (E.D. Okla. 1990). "A prison doctor remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment." *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997)). "Medical decisions that may be characterized as 'classic examples of matters for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview." *Id.* (quoting *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996)).

(Docket No. 27, p.9.)

The problem with this argument is that the difference-of-opinion cases relate to the *subjective* prong of a deliberate-indifference claim. These cases concern whether

10

the prison ignored or disregarded the inmate's medical condition; they say nothing about whether the inmate's medical condition is objectively serious. *See, e.g.*, *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) ("We assume for purposes of resolving this appeal that Callahan satisfies the objective component and turn our attention to the subjective component."). As a result, this case law does not support Defendants' argument that Rabidue's foot fractures were insufficiently serious to satisfy the objective component of the deliberate-indifference test.

Defendants cite no other cases on this point. But even if they did, the Court believes Rabidue's allegations as to his foot fractures satisfy the objective component of his deliberate-indifference claim. Under the applicable standards, a medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir.1999). Here, the Amended Complaint alleges that Rabidue's foot was fractured in January 2014; that an x-ray showed the fracture in February 2014; that his foot fractured two more times, in March 2014 and April 2014, with another set of x-rays in mid-March confirming multiple fractures; that his foot was not immobilized until after the second set of x-rays; and that Rabidue's foot is permanently injured as a result. This satisfies the objective component of a deliberate-indifference claim.

As to Rabidue's second claim for relief—based on his foot fractures—Defendants do not purport to challenge the subjective component of the claim. (*See* Docket No. 27, p. 8 ("Plaintiff has failed to show that his need for any housing restrictions, crutches, or even a medical lay in was objectively necessary. Thus, as to these allegations, his

Eighth Amendment claim fails.").) Accordingly, the Court recommends that Defendants'

motion to dismiss the foot-fracture claim be denied.

### C.  Subjective Disregard of Rabidue's Chronic Pain

Defendants next argue:

> Plaintiff also alleges that the Defendants did not provide him with adequate medication that would effectively manage his pain. During the course of his treatment, as alleged in the Amended Complaint, Plaintiff was prescribed certain medication, thus as to these allegations, Defendants assume, for the purposes of this motion, that Plaintiff can meet the objective component of an Eighth Amendment claim. Nevertheless, Plaintiff still fails to meet the subjective component of an Eighth Amendment deliberate indifference test.

(Docket No. 27, p.8.) Defendants do not explain whether this argument pertains to

Rabidue's first claim for relief (inadequate treatment for chronic pain) or his second

claim for relief (inadequate treatment for foot fractures).[1] However, inadequate pain

medication amounts to only one piece of Rabidue's claim concerning his fractured foot,

where it amounts to the entirety of his claim concerning his chronic pain—and therefore,

the Court will construe Defendants' argument as pertaining to the first claim for relief.

Here, the Court agrees with Defendants. As to Rabidue's chronic pain, the

allegations in the Amended Complaint establish that (1) he requested and received

medication in September 2012; (2) he informed the prison that the medication was

ineffective in November 2012; and (3) he elevated the issue to a higher official in

January 2013. The Amended Complaint contains no other allegations before the foot

fracture in January 2014. There are no allegations, for example, that Rabidue

continued bringing his pain (or the inadequacy of the medication) to the prison's

---

[1] In fact, Defendants' motion never explicitly acknowledges that Rabidue asserts two different claims for relief. It might be the case that Defendants have misread the Amended Complaint and believe it to assert only one claim.

attention after January 2013; likewise, there are no allegations that the chronic pain inhibited Rabidue's daily functioning in any material way. From these allegations, there is simply no way for the Court to infer that Defendants were aware of, and consciously disregarded, a risk of severe and unnecessary pain. Accordingly, the Court recommends that Defendants' motion to dismiss the chronic-pain claim (Count One) be granted. Because Defendant Sicotte is involved in Count One only, and is not involved in Count Two, it follows that Defendant Sicotte should also be dismissed from the case.

## II. **Qualified Immunity**

Finally, Defendants make a *pro forma* argument that they are entitled to qualified immunity:

> Assuming *arguendo* that Plaintiff demonstrated a violation of his constitutional rights, Defendants are nevertheless entitled to qualified immunity because their action did not violate clearly established law. There is no clearly established law in this jurisdiction that states that the actions of Defendants, as alleged in the Complaint, violated any law. As a result, Defendants are immune from liability.

(Docket No. 27, p.11.) This is, of course, too conclusory to be of any use. But nonetheless, the Court will consider the question.

The Tenth Circuit has recently explained the "clearly established" standard for qualified immunity:

> In order for a constitutional right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.
>
> A plaintiff may satisfy this standard by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains. However, the plaintiff need not locate a *perfectly* on-point case. In fact, the Supreme Court has explained that officials can still be on notice that their conduct violates established law even in novel factual circumstances.

13

> Nevertheless, the Supreme Court has repeatedly told courts not to define clearly established law at a high level of generality. . . . In sum, existing precedent must have placed the statutory or constitutional question beyond debate. We must scrupulously adhere to our longstanding duty to ascertan clear law (clear answers) that would apply to the situation at hand.

*Quinn v. Young*, 780 F.3d 998, 1004-05 (10th Cir. 2015) (internal citations, quotation marks, and alterations omitted). The Tenth Circuit employs a "sliding scale" in identifying clearly established law: "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Casey v. City of Federal Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007).

Should Chief Judge Krieger adopt the Court's foregoing recommendations, the only claim Rabidue has stated is the second claim, pertaining to his foot fractures. And there is an abundance of case law establishing that broken or fractured bones are sufficiently serious to trigger a prison's duty to provide treatment. *See, e.g.*, *Heidtke v. Corrs. Corp. of Am.*, 489 F. App'x 275 (10th Cir. 2012) (fractured arm bone); *Fitzgerald v. Corrs. Corp. of Am.*, 403 F.3d 1134 (fractured hip); *Welsh v. Bishop*, No. 13-cv-01721-PAB-CBS, 2015 WL 1064155 (D. Colo. Mar. 9, 2015) (bone in right hand); *Kirkland v. O'Brien*, Case No. 12-cv-02083-WJM-KLM, 2014 WL 1224564 (D. Colo. Mar. 25, 2014) (broken leg). Each of those cases raised its own issues with respect to the subjective component of the claim—but in each, it was clear beyond debate that the prison could not deliberately disregard the injury. Likewise, here, it is clearly established that Defendants could not deliberately disregard Rabidue's fractured foot. The Court therefore recommends that Defendants' motion to dismiss on the basis of qualified immunity be denied.

14

## **Recommendation**

For the foregoing reasons, it is recommended that Defendants' Motion to Dismiss (Docket No. 27) be GRANTED IN PART and DENIED IN PART, such that:

- The Amended Complaint be DISMISSED to the extent it seeks money damages against Defendants in their official capacities;
- Defendants Falk, Long, and Sicotte be DISMISSED;
- Count One of the Amended Complaint be DISMISSED; and
- The Motion be DENIED in all other respects.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colo. Dep't of Corr., 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: May 29, 2015  
       Denver, Colorado

*s/ Michael J. Watanabe*  
Michael J. Watanabe  
United States Magistrate Judge